326 So.2d 396 (1976)
Samuel G. HENSON
v.
Porfirio GONZALEZ.
No. 10568.
Court of Appeal of Louisiana, First Circuit.
January 12, 1976.
*397 Donald L. Beckner, Gill, Lindsay, Seago & Beckner, Baton Rouge, for defendantappellant.
Bruce K. Turner, Baton Rouge, for plaintiff-appellee.
Before LANDRY, COVINGTON and BARNETTE, JJ.
BARNETTE, Judge.
This is an appeal from a judgment rendered in the City Court of Baton Rouge for $600.00 plus legal interest and costs for the failure of the defendant-appellant to pay for three jewelry display cases. The defendant alleges that his refusal to pay is justified in that the showcases were poorly constructed and were unfit and unsafe for the installation of the glass front and top. In rendering judgment for the plaintiff, it was the trial court's finding that the plaintiff substantially complied with the contract to build the type of showcases requested.
The contract between the parties is completely oral. The record reflects that on November 7, 1973, defendant-appellant, Porfirio Gonzalez, a jeweler, approached the plaintiff-appellee, Samuel G. Henson, to build the three above mentioned cases. Henson, a cabinet maker by trade, had no prior experience with display cases. However, *398 he saw no problem with construction and agreed to build the cases for the undisputed amount of $200 each.
During the initial negotiations, a sketch of a counter design taken from a magazine by Gonzalez was shown to Henson with verbal instructions that he wanted " . . . a showcase built like this." It was also agreed initially that Gonzalez would arrange for the glass to be put on after the cases were delivered.
The magazine sketch is labeled as follows:
"Sit Down Type Showcase"
"Plastic laminate covered or wood veneer on closed base or on tubular steel legs with storage drawers under in back and display drawers inside case."
To the left there is a profile view of the side that is cut away to show the general method of construction. This drawing is labeled with basic exterior width and height measurements in inches. Just to the right there is a three dimensional drawing of the showcase as it would look when completed. It is clear from the drawing that the case is of typical rectangular construction with a small overhang extending about six inches to the front or customer side. There is a glass counter top and a vertical piece of glass full length across the front and extending down about six inches to cover the front face of the overhang.
One of plaintiff's allegations is that he ". . . built the jewelry cases in accordance with the plans submitted by the defendant . . ." and thus being, for this reason, in compliance with their contract. An examination of the sketch entered into evidence by the plaintiff will reveal that it is at most a guide to construction. By no stretch of the definition could it be considered a plan or blueprint. Only a few general external dimensions are given. There are no details of the construction shown, no methods of joining the various pieces where they come together, and no specifications for fasteners, such as nails, screws, dowels, clips, glue, etc. The cutaway profile view is only of one side, and it is vague and lacks detail. There is neither a requirement for the type of material to be used in construction nor is a thickness or grade of quality specified in the sketch. The construction of a showcase using the drawings and specifications in the exhibited sketch would require the craftsman to significantly enlarge upon the detail of design using his own skill and improvisation, and it is the opinion of this court that the sketch was meant for illustrative purposes only.
Since the trial court found that there was substantial compliance on the part of the plaintiff and rendered judgment accordingly, it must be assumed that it was the opinion of the trial court that this was a construction contract rather than a contract of sale. It is our opinion that the trial court was correct in this respect and that the contract between Gonzalez and Henson is a building contract within the meaning of Article 2756 of the Civil Code. That article is found under the section headed "Of Constructing Buildings According to Plots, and Other Works by the Job, and of Furnishing Materials" reads as follows:
"Building by plot and work by job, definitions"
"To build by a plot, or to work by the job, is to undertake a building or a work for a certain stipulated price."
The above section and article are in Title IX of the Code entitled "Of Lease." Building or Construction contracts involve primarily the furnishing of labor and the contractor's skill in the performance of the job, rather than the mere sale of materials. Papa v. Louisiana Metal Awning Company, 131 So.2d 114 (La.App. 2d Cir. 1961); Mangin v. Jorgens, 24 So.2d 384 (La.App.Orl.1946).
In the instant case, the contract involved the hiring or "letting out" of the labor and *399 skill of the plaintiff, a craftsman, in the construction of a work for a certain stipulated price, rather than the sale of an existing thing. See also Hermeling v. Whitmore, 140 So.2d 257 (La.App. 1st Cir. 1961). In Hermeling, a contractor purchased a lot and using his own plans constructed a house as a speculation. It was completed and then put on the market. The court distinguished the facts from the earlier case of Matthews v. Rudy, 4 La.App. 226 (1926), that was factually similar except that there was an agreement made with the prospective purchaser for an agreed price prior to the construction of the house. The court in Hermeling declared that "under these [Hermeling] facts we find that the building was not `undertaken to make by the job'" and that " . . . the builder is treated as a vendor. . . ." Thus, in Hermeling, although of necessity the house had to be constructed, it was a sale of a finished house as it sat on the lot. The house was already in existence at the time negotiations were entered into.
It is not the purpose of this opinion to determine the cut off point in the negotiation of a contract which distinguishes the contract for construction from one of sale, that is, whether the contract is negotiated before or during the construction process. It is clear from our jurisprudence and the pertinent articles of the Civil Code, supra, that where, as in this case, negotiations are completed prior to the commencement of construction, that the obligation is governed by the articles on building contracts rather than sales.
The defendant has argued in Papa and Mangin, supra, and in Airco Refrigeration Service, Inc. v. Fink, 242 La. 73, 134 So.2d 880 (1961), that the determinative factor in finding a construction contract rather than a sale is the installation of the product (patio cover, floor furnaces and air conditioner, respectively) on the premises as a necessary antecedent to use of the object. This argument is without merit. The codal articles[1] governing building contracts contemplate a letting out of services. These articles do not condition themselves on a requirement of installation. In many cases, including those cited by the defendant, the contract calls for the installation of some object built into or attached to a building or other structure. Installation, however, is not an essential condition to a contract for construction, to distinguish it from one of sale. We therefore hold that the codal articles applicable to the issues in this case are those relative to building contracts or more particularly those relating to the letting out of services, rather than those relative to sales.
It is necessary to make this distinction to determine the defenses and remedies available to the defendant and if he has met the burden of proof which those defenses require.
In building or construction contracts, substantial performance is the standard rule for determining if the contractor is entitled to recover the contract price. Airco Refrigeration Service, Inc. v. Fink, supra, and citations listed therein; Neel v. O'Quinn, 313 So.2d 286 (La.App. 3d Cir. 1975), writ refused 319 So.2d 440 (La. 1975); Jim Walter Corporation v. Laperouse, 196 So.2d 539 (La.App. 3d Cir. 1967). Airco further stated that it is a question of fact whether or not there has been substantial performance so as to permit recovery on the contract.[2] Since this is a question of fact, the court on appeal is bound by the directive of the manifest error rule.
The Supreme Court in Airco listed several factors to be considered in determining whether there has been substantial performance.

*400 "Among the factors to be considered are the extent of the defect or nonperformance, the degree to which the purpose of the contract is defeated, the ease of correction, and the use or benefit to the defendant of the work performed." 134 So.2d at p. 882.
We cannot say that the trial court was manifestly wrong in its finding of substantial performance by the plaintiff contractor.
Once substantial performance has been proven by the plaintiff, he is entitled to recover the contract price less whatever damages the owner may prove attributable to the breach. Airco, supra, and citations listed therein, Cortiza v. Rosenblat, 291 So.2d 425 (La.App. 4th Cir. 1974). Subsequent cases have held that:
"An owner seeking to recover from the contractor has the burden of proving both the existence and nature of the defects, that the defects are due to faulty materials or workmanship and the cost of repairing the defects. LSA-C.C. Arts. 2762 and 2769. See Rathe v. Maher, 184 So.2d 256 (La.App. 1st Cir. 1966) writ refused 249 La. 201, 186 So.2d 159 (1966)."
Nichols Ford Company, Inc. v. Hughes, 292 So.2d 345 (La.App. 2d Cir. 1974).
The defendant has alleged three defects in the jewelry cases as they were delivered: (1) that the cases are "weak all over" and unsafe for the installation of glass, (2) that the cases were poorly made, and (3) that the cases were not constructed properly to facilitate the installation of glass without modification.[3]
The defendant has failed to establish allegations numbers one and two above. One of the showcases was introduced into evidence and examined by the trial court judge. The court did not comment on its observation nor is the showcase or any other evidence in the record before us on appeal that would tend to establish that that the cases were unsafe or that they were constructed in an unworkmanlike manner.
However, the record is replete with testimony and it is abundantly clear that the showcases as made would not accommodate the glass counter top or the glass front. There is no question that the agreement between Henson and Gonzalez required that Gonzalez was to arrange to have the glass put on. It is implicit from this, and also the illustrative drawing, that Henson knew that the showcases would eventually have glass fitted to them in some manner. When completed, however, the installation of the glass presented some problems which might have been avoided by some modification of the design.
The defendant under Airco and Cortiza, supra, upon proof could deduct this amount from the original contract price, upon proof of the cost of the modification or correction necessary to enable the glass to be installed properly. However, he has failed to allege or prove any dollar amount for the cost of such modification. The most desirable evidence would be a firm competitive bid for the necessary remedial work. Rathe v. Maher, 184 So.2d 256 (La.App. 1st Cir. 1966), writ refused 249 La. 201, 186 So.2d 159 (1966). Lacking this, an estimate by an expert witness at trial based on firm computation of the work undertaken would suffice in establishing the cost.
There is testimony from a witness from each side qualified as an expert in glass installation. Of the two experts, the *401 witness offered by Gonzalez speculated on a remedial cost figure. He testified that for an estimated $150 to $200 he could install a minimum of quarter inch glass in a professional manner. This is not a certain estimate, nor is it broken down to itemize the cost of remedial work, as distinguished from the cost of the glass and the glaziers labor, which had been contemplated as an expense to be borne by the defendant, Gonzalez. The defendant has failed to discharge this essential element of proof and no consideration can be given to a reduction in the contract price.
For the foregoing reasons, the judgment appealed is affirmed at the appellant's cost.
Affirmed.
NOTES
[1] LSA-C.C. articles 2673, 2745 and 2756, et seq. See also 7 La.L.Rev. 564.
[2] Where there is no substantial compliance, the contractor's sole recovery would be under quantum meruit. See Airco Refrigeration Service, Inc. v. Fink, 242 La. 73, 134 So.2d 880 (1961).
[3] These allegations constitute an affirmative defense. The defendant's answer contained only a blanket denial of the plaintiff's claim and it did not set this matter forth as an affirmative defense as required by C.C.P. art. 1005. However, these allegations in the testimony were not objected to at trial, and therefore they have the effect of amending the pleadings by virtue of C.C.P. art. 1154.