BOUTALL, Judge.
This is a suit on a contract wherein plaintiff, a subcontractor contracted to do carpet and flooring work on a construction job in which defendant was the prime contractor on land owned by himself. There was judgment prior to trial granting “partial summary judgment” for the amount of $32,-433.11 undisputed by both parties and. preserving plaintiffs rights to proceed for an additional $15,385.59. Plaintiff appeals from judgment dismissing this part of his suit for the extra $15,385.59 after a trial on the merits. No written or oral reasons were assigned.
The project Versailles Arms Apartments No. 2, was an FHA project consisting of several apartment buildings, and was to have been finished by April, 1974, with work to be done according to a schedule overseen by the U. S. Dept, of Housing and Urban Development, who were to make monthly inspections. Failure to meet this schedule as per these inspections subjected the contractor to monetary penalties.
Sibille, the subcontractor, fell behind in his scheduled work. Meyer, the contractor, then brought in others to perform some of Sibille’s work. He paid a total of $26,049.02 to two substitutes: Sherwin-Williams for tile work in buildings O, P, and Q; and Southern Interiors for carpet work in buildings E, F, and Z; and buildings M, N, and K.
Sibille’s petition prayed for the sum of $47,818.70 which he alleged represented the “amount due for the various services, labor and materials furnished and pursuant to the terms and provisions of the agreement.” *1004 Sibille did not itemize or otherwise explain this amount, but from his testimony at trial he apparently arrives at this figure and the balance he still claims as follows:
Carpet work done under contract $55,112.00
Vinyl work done under contract 10,366.00
Extra padding laid, not invoiced 1,220.40
Extra carpet cost (acknowledged by Meyer) 200.00
Extra work — patching slab (acknowledged by Meyer) 1,300.00
Extra work — replacing carpet damaged by vandals 2,160.00
Lost profit on work performed by Southern Interiors and Sherwin Williams 3,708.60
$74,067.00
Less amount paid to Sibille before suit 26,049.02
$48,017.98
Less amount paid under summary judgment ' 32,433,11
Total prayed for at trial $15,584.87
The difference between this and plaintiff’s figure is unexplained. However, since plaintiff referred to a remainder figure of $15,385.59 in the summary judgment and changed this to a figure of $15,547.27 in his brief, it seems that there may be some error of calculation on his part. The difference we find to be immaterial.
Meyer’s calculations take a different tack. The contract price was $79,742.00, plus $1450 for two extra jobs performed by Sibille which Meyer has acknowledged as above, from which Meyer would subtract the amount he paid to Southern Interiors and Sherwin-Williams. This balance totals $58,482.13, which equals the $26,049.02 paid prior to suit plus the $32,433.11 paid under summary judgment. Thus, by Meyer’s reckoning, no further sums are due to Si-bille.
Plaintiff does not state in his petition whether he seeks relief under the contract or on the basis of quantum meruit. Although his petition sounds in contract, his case at trial, evidence, testimony, and arguments seem to be a claim for quantum meruit. Also, the amount sued is much less than the contract price plus his alleged extras minus what was previously paid to him.
The situation is governed by the provision of Civil Code Art. 2769 from which the following rules were extracted in the case of Airco Refrigeration Service, Inc. v. Fink, 242 La. 73, 134 So.2d 880 (1961):
“[1,2] The contract involved in the instant case is a building contract within the definition of Article 2756 of the LSA-Civil Code. Article 2769 is therefore controlling. Under this codal provision the law is well settled that when the contractor has substantially performed a building contract which he has breached, he is entitled in a suit on the contract to recover the contract price less whatever damages the owner may prove attributable to the breach.
“[3] Substantial performance of the contract is essential to warrant the application of this rule of law. For if the breached contract has not been substantially performed, the contractor may not recover on the contract, but is limited to recovery on quantum meruit.”
It appears from the evidence and testimony that the trial judge concluded that Si-bille did not substantiate the amount of work he claimed to have done. His bare testimony is unsubstantiated by any independent evidence and he offers no supporting witnesses. We note that Sibille admits that he had no individual employees himself, but subcontracted the work to two other concerns, the Karpeteers Co. and Gil’s Carpet Sales. Sibille paid them only as he was invoiced by them for segments of work as finished. These two concerns installed the carpet and vinyl, and Sibille visited the job infrequently. Sibille called no one from these two firms to testify, his was the only testimony offered to the court. The burden of proof is upon him as plaintiff, and he did not carry it. His suit must fail for lack of sufficient proof of substantial performance or quantum meruit.
Plaintiff argues that Meyers acted in breach of contract in substituting others to do his work and cannot deduct the amount paid to these others from the amount due to Sibille. This argument is inapropos to the situation since Sibille does not pray for the *1005 full contract price, and has not proven that he performed his obligations under the contract. Plaintiff thus confuses two theories of the case by his attempt to proceed on quantum meruit and also on the contract without a clear election as to one or the other, and without pleading alternatively. Our assessment of the evidence offered shows only that plaintiff has not proven the work performed and that he has employed subcontractors without written consent of the general contractor. The proof that defendant violated the contract is very confusing.
The contractual provisions pertinent to this case are as follows:
“ARTICLE II. The subcontractor agrees to be bound to the Contractor by the terms of the general contract, Surety Bond, general conditions, drawings and specifications for the entire work (which he has examined and read) insofar as they relate in any part or in any way to the work undertaken herein and to assume towards the Contractor, in connection with the work covered by this contract, all of the obligations and responsibilities which the Contractor by those documents assumes towards the Owner or anyone else. The Subcontractor further agrees not to sub-let, assign or transfer this contract or any part thereof without the written consent of the Contractor." (Emphasis added)
* * $ * * *
“ARTICLE VI. The Subcontractor agrees that the work under this contract is to be begun and provided for immediately, and carried on promptly; and the Subcontractor agrees to complete the work covered by this contract in such time and in such manner that the Contractor may complete all of the work included in it (sic) contract with the Owner on or before the first day of_, 19 _It being agreed that the work will be carried on as required by the Contractor, promptly and efficiently, and without delaying the Subcontractor or other branches of work; and if necessary, certain parts of the work shall be prosecuted in preference to others. In order to secure the execution of this work at and within the .time specified, it is hereby distinctly agreed that damages arising from the nonfulfillment of this contract as regards time, shall be deducted from the contract price, as liquidated damages, arising from the contract price, as liquidated damages, on the basis of_per calendar day.
“Should the Subcontractor be delayed in the prosecution or completion of the work by the act, neglect or default of the Owner, the Architect or by damage caused by fire or other casualty for which the Subcontractor is not responsible, or by the combined action of the workman, in no wise caused by, or resulting from default or collusion on the part of the Subcontractor, then the time herein fixed for the completion of the work shall be extended the number of days that said Subcontractor has been thus delayed, but no allowances or extension shall be made unless a claim therefor is presented in writing to the Contractor within forty-eight (48) hours of the occurrence of such delay. No additional compensation in connection with extension of times will be allowed unless specific agreement is made at the time such extension is granted.”
“ARTICLE VII. Should the Subcontractor at any time refuse or neglect to supply a sufficient number of properly skilled workmen, or a sufficient quantity of materials of proper quality, or fail, in any respect, to prosecute the work covered by this contract, with promptness and diligence, such that he has fallen behind the progress of the other crafts on the job, thus causing them to delay, or should he fail in the performance of the agreements herein contained, the Contractor may, at his option, after forty-eight (48) hours written notice to the Subcontractor, provide any such labor and materials and deduct the cost thereof from any money then due or thereafter to become due to the Subcontractor under this contract; or the Contractor may, at his option, terminate the employment of the *1006 Subcontractor for the said work and shall have the right to enter upon the premises and take possession, for the purpose of completing the work included under this contract, of all materials, tools and appliances thereon, and may employ any other person or persons to finish the work and provide the materials therefor; and in case of such discontinuance of the employment of said Subcontractor, said Subcontractor shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished; at which time, if the unpaid balance of the amount to be paid under this contract exceeds the expenses incurred by the Contractor in finishing the work, such excess shall be paid by the Contractor to the Subcontractor; if such expenses shall exceed such unpaid balance, then the Subcontractor shall pay the difference to the Contractor. The expenses incurred by the Contractor as herein provided, either for furnishing materials or for finishing the work and any damages incurred by such default, shall be chargeable to and paid by said Subcontractor, and the Contractor shall have a lien upon all materials, tools, and appliances taken possession of as aforesaid, to secure the payment thereof.”
Prom the evidence, it is apparent that in December of 1973 and January of 1974, plaintiff was behind schedule on his work and during this time the substitutions were made. Meyer testified that during this time (HUD) inspections became due, and that no one was on the job for Sibille, who could not be found. He sent two telegrams to Sibille on January 17 and January 31, 1974, invoking Article VII of the contract. The invoices for the substitute subcontractors are dated December 20, 1973, December 21, 1973, January 5, 1974 and March 4, 1974; however, they are not due upon date of invoice but upon completion of job or on receipt. The evidence and testimony on when these jobs were performed is sketchy, and nowhere does plaintiff enlighten us, presumably since he was not around at that time. Some time after February 4, 1974 additional work under the contract was performed by Sibille. From the evidence, we cannot relate these three items, the failure of work by Sibille, the notice of failure, and the substitute work done, within a time frame. The evidence could indicate that the plaintiff had abandoned the job, and that Meyer had executed his second option under Article VII to employ another subcontractor. The evidence indicates an attempt by Meyer to terminate Sibille’s employment by numerous unsuccessful telephone calls followed by the telegrams. Under the second option of Article VII, other persons may be employed and Sibille, the subcontractor, terminated without the 48 hours written notice required by the first option of the Article.
Any work subsequently done by Sibille, in February 1974 or thereafter, may be forbearance on the part of the contractor since Sibille had already been in breach of his obligations under the contract. Under Article II the work schedules and conditions of the general contract are included in the Meyer-Sibille contract by reference. These schedules were not met. Additionally, Si-bille is forbidden to sub-let the contract without written consent from Meyer. It is obvious from Sibille’s testimony that he had sublet the job from the start. The trial judge apparently recognized this in his remarks during the trial, and we cannot say otherwise. Sibille admitted that he had no such written consent from Meyer. The underlying cause of the parties’ present difficulties seems to be the unavailability of the subcontractor, Sibille, or his employees, at crucial times. This is the very situation which this prohibition in Article II was designed to prevent.
Since plaintiff was in breach of the contract and did not complete all the work contracted for, he cannot recover the contractual price, and his claims for quantum meruit must be limited to the contract price less any amount expended by the defendant to finish it. Bouterie v. Carre, La.App.1942, 6 So.2d 218; Keating v. Miller, La.App. 4th Cir. 1976, 339 So.2d 955. Plaintiff has already received by prior payment that to which he is entitled. He cannot recover more.
*1007 For these reasons, the judgment is affirmed.

AFFIRMED.