DOUCET, Judge.
Richard M. Primeaux, d/b/a/ Acadian Engineering Company, brought this suit against Merk Gaspard to collect the balance of $18,300.00 due under a construction contract, pursuant to which he delivered and erected a prefabricated metal building on defendant’s property. Defendant answered and filed a reconventional demand, seeking a reduction of the price because of defects in the building, attorney’s fees, and damages caused by plaintiff’s failure to satisfactorily complete the building on schedule.
Following a trial, the district court rendered judgment in favor of defendant on his reconventional demand in the sum of $4,769.00. Plaintiff appealed, and defendant answered the appeal, seeking an increase in the amount of the judgment against plaintiff, plus attorney’s fees for the services of his attorney at the trial and on appeal.
The evidence shows that for a number of years defendant has been in the business of selling honey bees. In 1978, he decided to begin extracting and selling honey from some of his approximately 1,500 bee hives. He contacted plaintiff about constructing a building on his property that was suitable for use as a honey extraction and bottling plant. Plaintiff prepared a proposal for the construction of a Butler prefabricated metal building, which he submitted to defendant in a letter dated March 8, 1978. In his letter, plaintiff stated that the estimated time for delivery of the building was six weeks and that its erection should be completed two or three weeks thereafter.
On March 22,1978, the parties executed a written contract based on plaintiff’s proposal. The price that they agreed upon was $38,500.00. $33,750.00 was to be paid upon delivery of the building, and $4,750.00 was to be paid upon the completion of its erection. Defendant and Mr. E. J. Walker, who witnessed the execution of the contract, testified that plaintiff stated at that time that the erection of the building would be completed within eleven weeks from that date.
There was a delay in the delivery of the building, which plaintiff attributed to his inability to get it from the manufacturer. On May 22, 1978, defendant’s attorney wrote to plaintiff, putting him in default and notifying him that defendant would seek damages caused by the delay in delivery. It was established at the trial that the business of extracting honey is seasonal in nature, the latest time for extraction being the middle of August or the first of September.
The building was delivered to the job site on June 12, 1978. Defendant paid $20,-000.00 at that time. He testified that plaintiff agreed to accept the reduced amount, pending a determination of how much defendant would lose as a result of the delay. However, plaintiff testified that he never consented to the reduction. Plaintiff began the erection of the building three days after its delivery. He made several demands for payment, and on August 25, 1978 he stopped working on the building. At that time the building was substantially completed, but it contained numerous defects, including leaks in the roof, missing bolts on one wall, and inadequate braces for one wall and a door. Mr. Kenneth Long, an expert on the construction of metal buildings, testified that it would cost $5,809.00 to cure the defects in the building.
*1252 The trial judge found that plaintiff was entitled to recover $12,091.00 from defendant, which was the remainder owed on the price of the building, less the $5,809.00 that would be required to cure the defects and an additional $600.00 that defendant had spent for insulation. He also found that as a result of the delay in the completion of the building, defendant had not been able to extract and sell 125 barrels of honey, which he had on hand. He found that the honey had a sale value of $300.00 per barrel, or a total of $37,500.00, and that the cost of extracting and bottling the honey was $30.00 per barrel, or a total of $3,870.00. He concluded that defendant was entitled to recover $16,860.00 as a result of plaintiff’s failure to satisfactorily complete the building within the time agreed upon, and rendered judgment in his favor in the sum of $4,769.00, the difference between $16,-860.00 and $12,091.00. The $16,860.00 figure was evidently the result of an error in computation, since the difference between $37,500.00 and $3,870.00 is actually $33,-630.00.
The following issues have been raised on appeal.
(1) Is defendant entitled to damages arising out of the delay in the delivery and erection of the building?
(2) Is defendant entitled to attorney’s fees?
On appeal, plaintiff argues that defendant is not entitled to damages for the loss of his honey, because he failed to mitigate those damages and because he did not adequately prove them. The issue of whether defendant has a cause of action for such damages under the contract has not been raised.
Plaintiff’s argument that defendant failed to mitigate his damages is based on defendant’s testimony that although there were other bee keepers in the area with equipment for extracting honey, he. did not contact them about extracting his honey for him. However, defendant also testified that his reason for not contacting them was that they were not well enough equipped to extract his honey in addition to their own during the limited season. That testimony went unchallenged. Plaintiff did not establish that anyone was able or willing to assist defendant with the extraction and bottling of his honey. We therefore reject his argument that defendant failed to mitigate his damages.
Turning to the question of defendant’s proof of his damages, we find that there was no direct evidence on the exact amount of honey that was lost. It was never measured, because it remained in the hives. Defendant testified that it costs him $30.00 per barrel, which is equal to 660 lbs., to extract the honey from the hives and bottle it. According to defendant, it would have been useless to incur the expense of extraction after the season had ended, because the honey would have been rancid and not fit for human consumption. However, defendant also testified that he had 1,100 hives available for extraction and that each hive yields 70-100 lbs. of honey. He estimated that he lost 150 barrels of honey, or an average of 90 lbs. per hive. His testimony was corroborated by Mr. Clarence Normand, who is also a bee keeper. Mr. Normand testified that in a good year a hive will yield 75-100 lbs. of honey and that in a bad year it will yield 35-50 lbs.
Mr. Normand also testified that the market price for honey in 1978 was $.48 per pound, or $316.80 per barrel. Defendant testified that the price was the same in 1978 and 1979, and that he had received $325.00 per barrel for the 164 barrels of honey that he sold in 1979. He produced three receipts for the 1979 sales. Plaintiff objected to their admission into evidence, arguing that they were not relevant to the issue of defendant’s loss in 1978 and that they were not the best evidence available. The trial judge admitted them for the limited purpose of showing that defendant was able to sell honey in 1979.
In view of that evidence, we do not find manifest error in the trial judge’s finding that defendant lost 125 barrels of honey or in his finding that the honey was valued at $300.00 per barrel. Defendant’s 1,100 hives *1253 would have had to yield an average of 75 lbs. each to produce 125 barrels. According to the undisputed testimony of defendant and Mr. Normand, that would have been at the lower end of the normal range of production for 1978. We will therefore affirm the judgment in defendant’s favor, after amending it to conform to the facts found by the trial judge.
The only remaining issue is defendant’s demand for attorney’s fees, which he bases on Article 2545 of the Civil Code. As we noted at the outset of this opinion, the contract in this case is one for the construction of a building. It has some of the appearances of a contract of sale, since the building was prefabricated and the contract speaks of its delivery to the job site. However, the negotiations and the execution of the contract were completed prior to the time that plaintiff began erecting the building. See Henson v. Gonzalez, 326 So.2d 396 (La.App. 1st Cir. 1976). Furthermore, it is clear from the evidence that defendant’s complaints with the building are the result of the manner in which plaintiff erected it. The trial judge noted in his written reasons for judgment that the building had not been completed and that its completion might have cured the deficiencies in it.
Under these circumstances, we find that the articles of the Civil Code dealing with sales, including Article 2545, are not applicable. The governing provision is Civil Code Article 2769, which provides:
“If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract.”
That article has been uniformly interpreted in the jurisprudence to mean that when a contractor has substantially performed a building contract, which he has breached by failing to satisfactorily complete the structure, he is entitled to recover the contract price less any damages that the owner may prove attributable to the breach. Airco Refrigeration Service, Inc. v. Fink, 242 La. 73, 134 So.2d 880 (1961); Sibille v. Meyer, 355 So.2d 1003 (La.App. 4th Cir. 1978), writ denied, 357 So.2d 1166 (La.1978); W.B.P. Realty, Inc. v. Fontana, 344 So.2d 101 (La. App. 2nd Cir. 1977); Henson v. Gonzalez, supra; Neel v. O’Quinn, 313 So.2d 286 (La. App. 3rd Cir. 1975), writ denied, 319 So.2d 340 (La.1975).
Under Article 2769, defendant was entitled to have the contract price reduced by the amount necessary to complete the building and cure the defects in it. However, since that article does not authorize an award of attorney’s fees, they are not recoverable, and defendant’s demand must be rejected.
For the above and foregoing reasons, the judgment appealed by plaintiff is amended to award defendant, Merk Gaspard, the sum of $21,540.00. As amended, the judgment is affirmed. All costs of this appeal are taxed to the plaintiff-appellant.

AMENDED AND AFFIRMED.