393 So.2d 352 (1980)
BARBER BROTHERS CONTRACTING COMPANY, INC.
v.
CHET HOMES, INC., and Chester C. Rushing.
No. 13727.
Court of Appeal of Louisiana, First Circuit.
December 15, 1980.
Writ Refused February 6, 1981.
*353 Lawrence A. Durant, Baton Rouge, counsel for plaintiff-appellee, Barber Brothers Contracting Company, Inc.
Guy A. Modica, Baton Rouge, counsel for defendant-appellant, Chet Homes, Inc.
Before COVINGTON, CHIASSON and LEAR, JJ.
CHIASSON, Judge.
Chet Homes, Inc., defendant-appellant, appeals the decision of the trial court awarding Barber Brothers Contracting Company, Inc., plaintiff-appellee, the sum of $33,888.06, being the balance due on a contract existing between the parties. Appellant also appeals from the dismissal of its reconventional demand.
The following facts were stipulated to by the parties, to wit:
1) Chet Homes, Inc., as owner, entered into a contract with Barber Brothers Contracting Company, Inc. on July 3, 1973, for the construction of the streets, sidewalks, drainage and sanitary sewer facility in North Sherwood Estates Subdivision, East Baton Rouge Parish, Louisiana.
2) Plans and specifications were prepared by Billie F. Spell, Consulting Engineer.
3) The total amount of the contract, when signed on July 3, 1973, was for $244,736.40. The contract was based on unit prices and the final contract price totaled $247,331.30.
4) The subdivision was accepted by the City-Parish on October 23, 1974.
5) Letter dated July 9, 1973, was sent by owner to contractor for contractor to commence work as per the contract.
6) Work was started by contractor on July 16, 1973, and, as per the contract, was to be completed within 150 calendar days. (December 13, 1973).
7) No extension of time was granted nor requested by either party whatsoever, either oral or written.
8) Owner nor contractor never suspended or terminated the contract in writing or (orally) as per paragraphs 43 and 44 of the "General Conditions of the Contract."
9) Advances for the payment of the partial estimates were made to Chet Homes, Inc. by Cameron-Brown Company, which was financing the project on an interim basis.
10) Total payments made by owner to contractor amounted to $214,193.30.
11) Chet Homes refused to pay Barber Brothers the retainage ($33,888.06) after the expiration of the lien period.
The stipulated facts reveal that Barber Brothers completed the project 314 days after the completion time expressed in the *354 contract. Barber Brothers finished the project, though it did not receive some payments until well over a year after completion. Because Chet Homes had not met the stage payments timely, Barber Brothers had an option under the contract to either suspend work or complete the project. It chose the latter and is now demanding full payment of the contract price.
Chet Homes objects contending that Barber Brothers breached the contract by not having the project completed on December 13, 1973, the 150th day of the contract. Chet Homes argues that time was of the essence as specifically provided in the contract and the failure of the plaintiff to finish the work within the 150 days allotted constitutes a breach of the contract. Because of the breach, defendant contends plaintiff is liable for damages as stated in the contract in the amount of $100.00 a day. Defendant wants to offset this liquidated damage to the retainage it has kept from plaintiff.
In the alternative, defendant urges that there was actual damages in the amount of $117,853.90 and plaintiff is liable for that amount.
The trial court found that the defendant, by not making its stage payments timely, was in default and "that one who is in default cannot seek specific performance or put the other party in default." It concluded that Chet Homes needed to be in strict compliance with its obligation before it could seek damages.
The contract that was entered into by the parties is the law as between them. La. C.C. art. 1901. The contract in this instance provided for many of the situations that arose in this case. Pertinent provisions of the contract are as follows:

"TIME LIMIT: The Contractor shall commence work under this contract within ten (10) days of the date of this Contract, and upon written notice to proceed. Time is of the essence of the Contract and the work order shall be issued promptly.
"The work under this Contract shall commence on or before the 7th day following the date of mailing by regular mail of the notice to proceed, and shall be finished in One Hundred and Fifty (150) calendar days from said date.
"The Contract shall include all work to be performed under this Contract.
"A request by the Contractor for an extension of the contract time will be considered only if, in support of the request, the Contractor shall allege delay in the performance of the work by either or both the following causes:
(a) An act of the Owner
(b) `Fortuitous events' or `events beyond the control' as defined in Louisiana jurisprudence.

"FAILURE TO COMPLETE WORK ON TIME: Should the Contractor fail to complete the work within the time limit above specified, then in such event, and for each calendar day of such delay, the Contractor agrees to pay the Owner the sum of One Hundred and No/100 ($100.00) Dollars per day, which amount will be considered as liquidated damages due the Owner by reason of the Contractor's failure to complete the Contract within the specified time limit. The Contractor further agrees that the Owner may deduct such liquidated damages, computed at the rate of One Hundred and No/100 ($100.00) Dollars per day, from monies due or coming due to the Contractor under this Contract.

"PARTIAL PAYMENTS: The Owner will pay monthly estimates, on or about the tenth day of the month, if the amount due on the entire Contract amounts to Five Hundred and No/100 ($500.00) Dollars or more. Partial payments will not be made for a smaller amount.

"FINAL PAYMENT: Upon satisfactory completion of the work, the Owner will issue a written acceptance of the work to the Contractor who will immediately thereafter file same with the Recorder of Mortgages for the Parish of East Baton Rouge.
"Not less than thirty (30) days after filing the formal acceptance of the work with the Recorder of Mortgages, provided *355 that all work done under this Contract is at that time found to be in good condition insofar as the Contractor is responsible for it, the Owner will pay the Contractor the retained portion of the Contract price, after deducting therefrom such sums as may be lawfully withheld under any of the provisions of this Contract, ..."
Pertinent provisions of the General Conditions of the Contract are as follows:
"44. Contractor's Right to Suspend Work or Terminate Contract:
"The Contractor may suspend work or terminate Contract upon ten (10) days' written notice to the Owner and the Engineer, for any of the following reasons:
* * * * * *
(b) If the Engineer should fail to act upon any Request for Payment within ten (10) days after it is presented in accordance with the General Conditions of the Contract.
(c) If the Owner should fail to act upon any Request for Payment within thirty (30) days after its approval by the Engineer.
* * * * * *
"76. Extension of Contract Time:
"A delay beyond the Contractor's control occasioned by an Act of God, or act or omission on the part of the Owner or by strikes, lockouts, fire, etc., may entitle the Contractor to an extension of time in which to complete the work as determined by the Engineer, provided, however, that the Contractor shall immediately give written notice to the Engineer of the cause of such delay.
"80. Engineer's Action on Request for Payment:
"Within ten (10) days of submission of any Request for Payment by the Contractor, the Engineer shall:
(a) Approve the Request for Payment as submitted.
(b) Approve such other amount as he shall decide is due the Contractor, informing the Contractor in writing of his reasons for approving the amended amount.
(c) Withhold the Request for Payment informing the Contractor in writing of his reasons for withholding it.
"81. Owner's Action on an Approved Request for Payment:
"Within thirty (30) days from the date of approval of a Request for payment by the Engineer, the Owner shall:
(a) Pay the Request for Payment as approved:
(b) Pay such other amount in accordance with Paragraph 82 as he shall decide is due the Contractor, informing the Contractor and the Engineer in writing of his reasons for paying the amended amount.
(c) Withhold payment in accordance with Paragraph 82 informing the Contractor and the Engineer of his reasons for withholding payment.
"82. Owner's Right to Withhold Payment of an Approved Request for Payment:
"The Owner may withhold Payment in whole or in part on an approved Request for Payment to the extent necessary to protect himself from loss on account of any of the following clauses discovered subsequent to approval of a Request for Payment by the Engineer:
(a) Defective Work.
(b) Evidence indicating the probable filing of claims by other parties against the Contractor.
(c) Failure of the Contractor to make payments to subcontractors, material suppliers or labor.
(d) Damage to another Contractor.
"83. Interest on Unpaid Requests for Payment:
"Should the Owner fail to pay an approved Request for Payment within thirty (30 days from the date of approval by the Engineer, and should he fail to inform the Engineer and the Contractor in writing of his reasons for withholding payment, the Owner shall pay the Contractor interest on the amount of the Request for Payment at the rate of six per cent (6%) per annum until payment is made."
*356 If parties contract with one another they must live up to their agreements or suffer the consequences that are provided for therein. In this case, Chet Homes made its first two payments untimely without any written reason being given to the contractor or engineer. Barber Brothers could have either suspended work or terminated the contract. (Condition 44). In addition, they could have sought interest on the amount not paid at the rate of six percent (6%) per annum. (Condition 83). In good faith it proceeded with the contract and waived the rights it had contracted for.
On December 13, 1973, Chet Homes again failed to make a timely payment on an estimate submitted on November 3, 1973, by Barber Brothers. Barber Brothers did not seek either of the two remedies provided for in the contract. This course of action, untimely stage payments, continued. Eventually on February 24, 1975, all back payments were made by Chet Homes to Barber Brothers except a balance of $33,888.06, which is the subject of this suit.
On the other hand, Barber Brothers failed to perform timely the work it had undertaken under the contract. They had not performed the work within the 150 days allotted. (Special ConditionsTime Limit). Chet Homes then had the option to either cancel the contract (Condition 43) or withhold $100.00 a day as liquidated damages. (Special ConditionFailure to Complete Work on Time). As it turns out, Barber Brothers took an additional 314 days to complete the job and Chet Homes has withheld the liquidated damages from the final contract price.
A classification of this contract will enable us to determine the applicable provisions of the Civil Code. We deem this contract to be a building contract under Chapter 3 of Title IX of Book III of the Civil Code. La.C.C. arts. 2745 and 2756.
"Art. 2745. Labor may be let out in three ways:
1. Laborers may hire their services to another person.
2. Carriers and watermen hire out their services for the conveyance either of persons or of goods and merchandise.
3. Workmen hire out their labor or industry to make buildings or other works."
"Art. 2756. To build by a plot, or to work by the job, is to undertake a building or a work for a certain stipulated price."
See also Town of Winnsboro v. Barnard & Burk, Inc., 294 So.2d 867 (La.App. 2nd Cir. 1974) writ denied 295 So.2d 445 (La.1974). Murphy Corporation v. Petrochem Maintenance, Inc., 180 So.2d 716 (La.App. 1st Cir. 1965).
Under this classification, we look to the provisions of Section 3, Chapter 3 of Title IX. Pertinent to our case are the following articles:
"Art. 2765. The proprietor has a right to cancel at pleasure the bargain he has made, even in case the work has already been commenced, by paying the undertaker for the expense and labor already incurred, and such damages as the nature of the case may require."
"Art. 2769. If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract."
From a reading of these articles, we find that either party may relieve himself of the contract before it is completed subject only to damages and losses incurred by the other party. The owner may relieve himself at his pleasure while the contractor is required by the jurisprudence to substantially perform his contract before he can sue for the contract price. Airco Refrigeration Service, Inc. v. Fink, 242 La. 73, 134 So.2d 880 (1961); Merrydale Glass Works, Inc. v. Merriam, 349 So.2d 1315 (La.App. 1st Cir. 1977) writ denied 350 So.2d 1211 (La. 1977); Henson v. Gonzalez, 326 So.2d 396 (La.App. 1st Cir. 1976).
In the case at hand, we not only had substantial performance on the part of the contractor, we had actual completion as of October 23, 1974. Thus the contractor has *357 the right to sue for the contract price. Merrydale, supra and Henson, supra. Barber Brothers is entitled to the remainder of the contract price, which has been stated to be $33,888.06.
Even though Barber Brothers is entitled to sue for the remainder of the contract price, they are "liable in damages for the losses ... from his non-compliance with his contract." La.C.C. art. 2769. The noncompliance of this contract is the failure of Barber Brothers to execute the contract at the time he has agreed to do it. Barber Brothers had agreed to execute the contract within 150 days or before December 13, 1973. As stated earlier, it was not completed until October 23, 1974 or 314 days later. Thus Barber Brothers is liable for the damages stipulated in the contract.
It has been argued that Chet Homes is not entitled to damages since damages could only be awarded from the putting in default of a breaching party. La.C.C. art. 1912. Barber Brothers argues that since Chet Homes breached the contract by making untimely payments, it was in default and could not put Barber Brothers in default. La.C.C. art. 1913. The trial court was of a similar thought when it said Chet Homes needed to be in strict compliance with its obligations before it could recover damages. We find these statements to be inapplicable in building contract cases, since the controlling code article does not require a putting in default.
As was stated in the Merrydale case, supra:
"Article 2769 is an exception to the general rule applicable to commutative contracts that no payment is due under a contract in the absence of total performance. Lambert v. Jones-McCloskey Construction, Inc., 311 So.2d 488 (La.App. 4th Cir. 1975); G. Salvaggio & Co., Inc. v. Delta Heights, Inc., 277 So.2d 754 (La. App. 4th Cir. 1973)."
Since the code provides that Barber Brothers can sue for recovery of the remainder of the contract price, it is entitled to that amount from Chet Homes. Additionally, Barber Brothers under the code is likewise liable for damages in not performing its obligations timely.
It has been stipulated that the retainage kept by Chet Homes is in the amount of $33,888.06 which represents the balance due under the contract. We now hold that Chet Homes is indebted to the plaintiff in the amount of $33,888.06 subject to a deduction of $31,400.00 which represents the liquidated damages as stipulated in the contract. ($100.00 a day for 314 days).
For these reasons, the judgment of the trial court is amended to the sum of $2,488.06, and as thus amended, is affirmed. Costs of this appeal are taxed against plaintiff-appellee.
AMENDED AND AFFIRMED.