131 So.2d 114 (1961)
Paul PAPA, Plaintiff-Appellant,
v.
LOUISIANA METAL AWNING COMPANY, Inc., Defendant-Appellee.
No. 9506.
Court of Appeal of Louisiana, Second Circuit.
June 1, 1961.
Rehearing Denied June 22, 1961.
*115 Lynn, Irion, Switzer, Trichel & Johnson, Shreveport, for appellant.
George L. Hayes, Jr., Shreveport, for appellee.
Before HARDY, GLADNEY and BOLIN, JJ.
GLADNEY, Judge.
In this action in redhibition plaintiff seeks to rescind a contract whereby defendant, for the consideration of $550 agreed to build, erect and install an overhead metal cover for plaintiff's concrete patio. Plaintiff alleges the existence of various defects and vices in the cover, the principal defect complained of being water leakage, and prays for restoration of the purchase price, removal of the cover and restoration of the premises to its original condition, and damages in the amount of $500. From a judgment of the lower court, rejecting his demands, plaintiff prosecutes this appeal.
The record of this cause discloses the following facts: In July of 1960, the parties agreed that defendant would fabricate and erect a waterproof aluminum cover over defendant's concrete patio; the patio is bounded on three sides by plaintiff's house and garage; the cover was designed, custom fabricated, and erected by defendant; plaintiff then examined the project, considered it substantially acceptable except for certain minor defects, and forwarded to defendant a check in the amount of $550 as payment in full; on the day following defendant's receipt of said check a heavy rain fell on the cover and plaintiff immediately complained to defendant that water was leaking onto the patio; defendant's workmen, in answer to the complaint, attempted to prevent further leakage by applying a caulking material between the cover and plaintiff's house; upon the occasion of the next heavy rain defendant again complained of leaks, and additional preventive measures were undertaken by defendant's crew; several such instances of complaint and attempted repair occurred during the following month, and upon one such occasion plaintiff became concerned that one of defendant's workmen was causing damage to the white surfaced shingles of plaintiff's roof, whereupon the workmen were ordered by plaintiff to quit the premises; plaintiff then demanded that defendant return the purchase price and remove the cover; the demand was refused and this suit was brought in September of 1960, some two months from the occurrence of the first complaints.
The lower court's judgment rejecting plaintiff's demands was predicated in large part upon the trial judge's personal examination of the premises. The judge found that "the general overall appearance of the structure erected is one of neatness and attractiveness", although certain minor defects were observed, to-wit: a "roughly" finished corner; rust spots at the base of the supports on the open side of the cover and on the bar joist supporting the roof of the cover, the latter not observable from the ground; barely noticeable marring of several of the shingles on plaintiff's roof in that the white granulated stone that covers the black composition shingles had been disturbed; *116 and, a slight discoloration, observable on close examination, of the concrete where the supports were installed. The above referred to examination was made after the occurrence of almost three continuous days of rainfall, and the trial judge noted that the only water on the patio, other than was obviously attributable to rain blown under the open end of the cover, were a few damp spots beneath the juncture of the facia board with the edge of the house. The judge, therefore, concluded that the cover did not leak and that had plaintiff allowed defendant to make the recommended changes and apply the finishing touches to the job he would have had no cause for complaint.
Plaintiff contends the lower court erred in dismissing as inconsequential the defects which were admittedly found to exist; in holding the plaintiff was not justified in terminating defendant's repair efforts despite the fact the district judge verified disturbance to plaintiff's roof; and in attributing overflow of the patio gutters during excessive rainfall to a malfunction in the house gutters.
Our reading of the transcript of this cause impresses us with the admission by defendant's representatives that the job was not complete and that had they been permitted to continue until the overflow problem was remedied, they would have then directed their attention to the elimination of the existing minor defects. The entirety of the testimony, when considered in light of the trial judge's examination of the premises, impels us to the conclusion that in spite of the existence of certain defects in the construction and erection of the cover, the project was substantially completed.
Plaintiff relies upon LSA-C.C. Art. 2520 as authority for rescission of the parties' agreement and return of the purchase price.[1]
In Mangin v. Jorgens, La.App.Orleans, 1946, 24 So.2d 384 at pages 386-387, with Judge McCaleb as organ of the court, it was stated:
"The judge of the lower court found in plaintiff's favor on the authority of Article 2769 of the Civil Code [citation of authorities].
"In the last cited case, we had occasion to review all of the prior jurisprudence wherein Article 2769 had been considered and interpreted. We said: `The foregoing article has been construed by the courts to mean that, where a contractor sues on a building contract and it is shown that the work delivered is defective or unfinished, the contractor is, nonetheless, entitled to recover the contract price if the defendant fails to establish the damages he has sustained by reason of the contractor's partial default. The remedy of the owner in such cases is for a reduction in the price to an amount necessary to perfect or complete the work according to the terms of the contract.'
"Counsel for plaintiff while recognizing the force of the foregoing pronouncements, maintains that they are inapplicable as the contract sued upon is not a building contract but one for the sale of the respective floor furnaces. Accordingly, he insists that the case is governed by Article 2520 et seq. of the Civil Code, which provides for the redhibitory action in sales contracts where the thing sold contains vices or defects which render it either absolutely useless or its use so inconvenient and imperfect that it must be supposed that the buyer would not have *117 purchased it had he known of the vice * * *
"We cannot agree with counsel. The contract in question did not involve merely the sale and delivery of floor furnaces. It was an agreement to furnish and install a heating system in the premises of defendant. This, while not a contract to build a house, is a construction contract as it contemplated erection and installation by plaintiff, as a heating contractor, of improvements upon the premises of defendant. It involved more than a mere sale of materials, i.e., the furnishing of labor and the contractor's skill in the performance of the job. In such circumstances, unlike the sale of merchandise, machinery and other articles, it would be practically impossible to undo the installation work and place the parties in the position they were prior to performance. Hence, the remedy of defendant in this case, as in other cases involving construction, is to seek a reduction in price of such amount as he will be required to expend in correcting the defects."
We are of the opinion that Article 2769[2] rather than Article 2520 is likewise applicable to the instant case. The aluminum patio cover which is the subject of this controversy was designed, fabricated and erected by defendants. Only a home with the exact dimensions of plaintiff's home could use the cover. Its attachment to the concrete patio and existing house edge was a permanent one, i.e., holes were drilled into the concrete, expansion plugs inserted, and the cover supports bolted to the concrete patio; also, a facia board and metal bracket supports effected the attachment of the cover to the house edge. Consequently, as in the Mangin case, this contract involved much more than a mere sale of materials. It involved primarily the furnishing of labor and the contractor's skill in the performance of the job.
The erected structure was found by the trial judge to be substantially completed, and our appreciation of the record inclines us to agree with that finding. Consequently, the relief to which plaintiff is entitled, if any, is a reduction in the contract price. We might observe in passing that even in redhibitory actions properly brought under Article 2520 a decree of quanti minoris is responsive and the judge has the power and duty, if he believes the evidence establishes only a partial failure of consideration, to decree a diminution in price. LSA-C.C. Art. 2543; Coco v. Mack Motor Truck Corp., 1958, 235 La. 1095, 106 So.2d 691.
In order to justify a decree of quanti minoris, whether predicated upon Articles 2520 and 2543 or Article 2769, one must establish not only the existence of the defects of which complained, but also the amount of the reduction to which he is entitled, i.e., the expenditures necessary to correct the defects. Coco v. Mack Motor Corp., supra; Ehrlich v. Roby Motors Co, 1928, 166 La. 557, 117 So. 590; Loeb v. Neilson, La.App. 4th Cir., 1961, 128 So.2d 447; Lillis v. Anderson, La.App. Orleans, 1945, 21 So.2d 389; Reimann Construction Company v. Upton, La.App. Orleans, 1938, 178 So. 528. In the recent case of Loeb v. Neilson, supra, the court rejected the contention that the difficulty of introducing evidence as to damages justified a discretionary assessment of damages by the trial judge under authority of LSA-C.C. Art. 1934, subd. 3. Fully appropriate to the instant proceeding is the court's conclusion that [128 So.2d 449]:
"Not only has he made no showing whatsoever as to the difficulty or impossibility of determining and proving the cost of the repairs which he claims are necessary but, in addition, we are *118 of the opinion that such a cost could have been ascertained by him."
In light of the foregoing authorities we are of the opinion that although certain defects admittedly exist in the patio cover, plaintiff is nevertheless precluded from recovering either rescission of the contract, the work being substantially completed, or diminution in price, no showing of damages having been made. However, since the erected structure is deficient in some respects, we feel that plaintiff's claim insofar as it pertains to a reduction in the contract price, and which has failed in that regard for lack of evidence, should not be dismissed absolutely, but as of nonsuit. Coco v. Mack Motor Truck Corp., 1958, 235 La. 1095, 106 So.2d 691.
Accordingly, plaintiff's demands are dismissed as of nonsuit, and as so modified, the judgment is affirmed at appellant's cost.
NOTES
[1] Article 2520 provides: "Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely use less, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."
[2] Article 2769 provides: "If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his noncompliance with his contract."