KSLA–TV, INC.

v.

**RADIO CORPORATION OF AMERICA et al.**

**Civ. A. No. 78–1293.**

United States District Court, W. D. Louisiana, Shreveport Division.

Oct. 29, 1980.

---

**18.** *Wade* Tr. at 127–9.

**19.** Faso initially said petitioner was between twenty and twenty–five years old. Tr. Tr. at 155.

Colvin G. Norwood, New Orleans, La., for plaintiff KSLA-TV, Inc.

Ralph L. Kaskell, Jr., New Orleans, La., for defendant Stainless, Inc.

G. M. Bodenheimer, Shreveport, La., for defendant RCA.

E. Ross Buckley, Jr., New Orleans, La., for defendant Lexington Steel Co.

## MEMORANDUM RULING

STAGG, District Judge.

On October 4, 1978, plaintiff KSLA–TV, Inc. ("KSLA") brought this diversity action seeking damages arising from the October 8, 1977 collapse and destruction of a television antenna tower. KSLA and defendant Radio Corporation of America ("RCA") entered into the transaction by which KSLA came to own the tower on May 15, 1964. RCA caused defendant Stainless, Inc. ("Stainless") to design and fabricate the tower. Stainless employed a sub–subcontractor for the erection of the tower at the site of KSLA's transmitter in Caddo Parish, Louisiana. The construction was completed by November 17, 1964.[1]

Shortly after institution of this suit, RCA and Stainless each moved for summary judgment, contending that the transaction between KSLA and RCA was a *construction contract* and that this action is preempted under the ten-year liberative period established by La.R.S. 9:2772 (Supp.1964).[2]

1. The record does not establish the exact date upon which construction was completed. However, by letter of November 17, 1964, Stainless advised KSLA that the construction work had been inspected and that the inspector was "of the opinion that the installation is in accordance with Stainless, Inc. drawings and that no outstanding deficiencies on the tower exist at this time." KSLA regarded this letter as a notification of the completion of construction. *See* KSLA's original "Complaint for Damages" at paragraph VIII. The court concludes that construction was complete *by* November 17, 1964.

2. § 2772. Pre–emptive period for actions involving deficiencies in design, supervision or construction of improvements to immovables

A. No action whether ex contractu, ex delicto or otherwise, to recover on a contract or to recover damages shall be brought against any person performing or furnishing the design, planning, supervision, inspection or observation of construction or the construction of an improvement to immovable property:

(1) More than ten years after the date of registry in the mortgage office of acceptance of the work by owner; or

(2) If no such acceptance is recorded within six months from the date the owner has occupied or taken possession of the improvement, in whole or in part, more than ten years after the improvement has been thus occupied by the owner; or

(3) If the person furnishing the design and planning does not perform any inspection of the work, more than ten years after he has completed the design and planning with regard to actions against that person.

B. The causes which are pre–empted within the time described above include any action:

(1) For any deficiency in the design, planning, inspection, supervision or observation of construction or in the construction of an improvement to immovable property;

(2) For damage to property, movable or immovable, arising out of any such deficiency;

(3) For injury to the person or for wrongful death arising out of any such deficiency; and

(4) Any action brought against a person for the action or failure to act of his employees.

KSLA argued that the transaction constituted a *contract of sale,* and was in fact labeled as such on the original agreement, rendering § 2772 inapplicable.

This court denied the motions on February 25, 1980, ruling that

> [a] resolution of the motions depends upon the characterization of the transaction ... as a construction contract or as a contract of sale. Louisiana jurisprudence recognizes this issue as one of material fact, such that summary judgment is improper.... This issue of fact will be considered at the trial on the merits.

Stainless has now reurged its motion for summary judgment, arguing that the affidavit of Robert A. Farrington and the various exhibits appended thereto establish as a matter of fact that the transaction was a construction contract.

KSLA opposes the motion on three distinct grounds. First, KSLA continues in its belief that the transaction was a contract of sale, so that § 2772 is inapplicable. KSLA argues alternatively that, even if the transaction was a construction contract, § 2772 cannot constitutionally be applied to this particular contract. Finally, KSLA contends that § 2772 does not apply to Stainless in its capacities as materialmen and manufacturer of component parts, and that a negligence action brought against Stainless in that capacity is not barred by § 2772.

The court will consider these various contentions separately in this Ruling.

KSLA has also lately filed a motion for partial summary judgment, arguing that the uncontested facts in this case prove that § 2772 is not applicable and that Stainless and RCA are liable on the redhibition count of the complaint. KSLA's motion will be addressed in conjunction with the identical issues raised in Stainless' motion regarding the applicability of § 2772.

## (1) CONSTRUCTION CONTRACT OR CONTRACT OF SALE?

Louisiana courts have often wrestled with the distinction between sales contracts and construction (or "hiring of industry") contracts. *See e. g. Hunt v. Suares,* 9 La. 434 (1836); *Papa v. Louisiana Metal Awning Co.,* 131 So.2d 114 (La.App.2d Cir. 1961); *Long Leaf Lumber, Inc. v. Summer Grove Developers, Inc.,* 270 So.2d 588 (La.App.2d Cir. 1972); *PPG Industries, Inc. v. Schega,* 362 So.2d 1128 (La.App. 4th Cir. 1978). This problem often arises because a party to a contract may enter "into a single contract and yet be bound to perform two or more different obligations.[3]"

As Professor Litvinoff has noted, a contract of sale gives rise to an obligation "to give", *i. e.,* to transfer ownership, as well as an obligation "to do", *i. e.,* to deliver the

---

This pre–emptive period shall extend to every demand whether brought by direct action or for contribution or indemnity or by third party practice, and whether brought by the owner or by any other person.

C. If such an injury to the property or to the person or if such a wrongful death occurs during the ninth year after the date set forth in Sub–section A, an action to recover the damages thereby suffered may be brought within one year after the date of the injury, but in no event more than eleven years after the date set forth in Sub–section A (even if the wrongful death results thereafter).

D. Actions for the causes enumerated in Sub-section B of this Section, against the persons enumerated in Sub–section A of this Section, shall prescribe by the applicable prescriptive periods established by law for such actions.

E. The pre–emptive period provided by this Section shall not be asserted by way of defense by a person in possession or control, as owner, lessor, tenant, or otherwise, of such an improvement at the time any deficiency in such an improvement constitutes the proximate cause of the injury, damage, or death sued upon with regard to any cause of action arising out of the alleged delict, quasi delict, or obligation of any such person arising out of his possession or control of the property.

G. Causes of action which exist prior to July 29, 1964 shall be pre--empted one year from said date or by the applicable pre–emptive period established by this Section, whichever is later.

In 1979, the Louisiana legislature amended § 2772 to extend its coverage to "any person performing or furnishing the surveying, marking, and related services, preparatory to construction". La.Acts 1979, No. 329 § 1. These amendments have no bearing on this lawsuit.

**3.** *The Work of the Louisiana Appellate Courts for the 1977-1978 Term–Sales,* 39 La.L.Rev. 705, 709 (1979) (hereinafter cited as "*Sales*").

thing.[4] Litvinoff, 7 *Louisiana Civil Law Treatise—Obligations*, § 157 (1975) (hereinafter cited as *"Litvinoff"*). However,

> when different obligations are ultimately connected, ... one of them must be recognized as fundamental and if it is one to do, for instance, the whole contract will be treated as one giving rise to obligations of that kind.

*Litvinoff,* § 157 at 288. Thus, in a contract of sale, the obligation "to give", or to transfer ownership, is considered the *primary* obligation. Actually, it is a court's recognition of the obligation "to give" as the primary obligation that will determine the agreement's classification as a contract of sale.

When the obligation "to do" is considered the primary obligation, the transaction will be regarded as a construction contract. Professor Litvinoff gives the example of an artist who is commissioned to paint a portrait. The artist's obligation to use his skill in painting the picture, which is an obligation "to do", is the primary obligation.

> Once completed, the portrait remains the artist's property until the moment of delivery and he cannot be forced to part with it. If he refuses to deliver, the artist must return the price already collected and pay damages; he can be forced neither to transfer ownership nor to surrender possession of his work.

*Litvinoff, id.* Thus, the transaction in which the painter is commissioned is a construction, or "hiring of industry", contract.

In this case, the defendants incurred the obligations to design, fabricate and erect the tower, which are obviously obligations "to do", and to transfer ownership of the tower once it is completed, which is an obligation "to give". Considering the affidavit and exhibits submitted by Stainless, and the Louisiana jurisprudence which has dealt with this issue, this court must find that the obligations to design, fabricate and

erect the tower are the primary obligations, and that the agreement between KSLA and RCA is a construction contract.

Most of the reported cases that consider the distinction between construction contracts and contracts of sale involve machinery, fixtures, or other equipment which is "installed" in or on immovables. *See, e. g., Bel v. Capital Properties, Inc.,* 357 So.2d 1330 (La.App. 4th Cir. 1978) (window awnings); *Papa v. Louisiana Metal Awning Co., supra* (patio awning); *Long Leaf Lumber, Inc. v. Summer Grove Developers, Inc., supra* (air conditioning and heating units); *PPG Industries, Inc. v. Schega, supra* (glass doors, walls and windows). As one commentator has noted, the Louisiana courts have generally resolved the issue by "weighing the economics of the situation" to determine whether the primary obligation is one "to give" or "to do".[5]

For example, in *Hunt v. Suares, supra,* the plaintiff agreed to deliver and install marble fireplaces in the defendant's house. After the marble was delivered, but before it was installed, the house burned down, destroying the marble. The court found that the risk of the loss was on the defendant, since the transaction was a contract of sale: the "trifling" value of the obligation to do, *i. e.,* to install the marble, was greatly outweighed by the value of the marble itself, which the plaintiff was obligated "to give". This approach of weighing the economics of the situation has most recently been applied in *PPG Industries, Inc. v. Schega, supra,* in which the plaintiff fabricated glass doors, walls and windows and installed them in defendant's house. The court ruled that the contract was a construction contract, since "installation was more than a trifling part of the agreement." 362 So.2d at 1129.

In applying the jurisprudence to the facts in this case, the court immediately recognizes the distinction between the facts in

---

4. Article 1883 of the Louisiana Civil Code provides that "Every contract has for its object something which one or both of the parties oblige themselves to give, or to do, or not to do."

5. *Sales, supra,* 39 La.L.Rev. at 712.

this case and the facts in the aforementioned cases. For example, when air conditioning and heating units are installed in one's home, as in *Long Leaf Lumber, Inc. v. Summer Grove Developers, Inc., supra,* there are strong arguments both ways concerning the issue whether the consumer *purchased* air conditioning and heating units, or whether the consumer basically hired the labor and industry of the contractor who installs the air conditioning and heating units. In this case, however, it is absurd to suggest that a 1,709 foot, 7 inch television tower was "purchased" and was then "installed" at a relatively trifling cost upon KSLA's property.

The affidavit of Robert A. Farrington and the exhibits attached to his affidavit reveal that Stainless' design and fabrication of the tower were unquestionably the initial parts of a sophisticated construction project. The erection of the tower by the sub–subcontractor is even more clearly a hiring of labor. In addition, there is no question that the construction of the tower constituted a "construction of an improvement to immovable property" within the contemplation of § 2772. KSLA questions whether the tower could constitute an "improvement to immovable property" when RCA, by its own act, classified the tower as a movable in order to take advantage of the security of a chattel mortgage. However, in *Long Leaf Lumber, Inc. v. Summer Grove Developers, Inc., supra,* the air conditioning and hearing units retained their status as movable property for chattel mortgage purposes even after installation, though the court recognized that the agreement which called for their installation was a construction contract. Thus, the fact that the parties in this case treated the tower as a movable for security purposes is not controlling.

In its opposition to the motion for summary judgment, and in its own motion for partial summary judgment, KSLA does not seriously contest any of the allegations of fact contained in Mr. Farrington's affidavit. Rather, in support of its argument that the contract is a contract of sale, KSLA cites the fact that the contractual language is generally couched in terms of a sales agreement, and argue that the court should recognize the intent of the parties to treat the agreement as a contract of sale. However, in *Long Leaf Lumber, Inc. v. Summer Grove Developers, Inc., supra,* the contract at issue was labelled as an "Equipment *Purchase* Contract and Chattel Mortgage", yet the court ruled that the agreement was not a contract of sale but a construction contract. Thus, this court is of the opinion that the language of the contract does not and cannot remove this court's duty to determine which of the obligations imposed by the contract is the primary obligation, particularly in light of the fact that the contract in this case is a form contract.

KSLA also argues that the case of *FMC Corporation v. Continental Grain Corporation,* 335 So.2d 953 (La.App. 4th Cir. 1977), supports a finding that the transaction in this case is a contract of sale. This court cannot agree. While it is true that the court in that case found the transaction to be a contract of sale, the facts in that case are totally dissimilar to the facts in this case. In *FMC,* the transaction at issue involved the sale of a grain barge unloader which was installed at the defendant's unloading facilities. The court in that case obviously determined that the obligation to give, *i. e.,* to transfer ownership to the grain barge unloader, economically outweighed the value of the obligation to do, *i. e.,* to install the unloader. As discussed previously, this court cannot find that the obligation to transfer ownership to the tower was the primary obligation in the transaction at issue in this case.

Finally, in page 6 of its memorandum in support of its motion for partial summary judgment, KSLA states that

> [i]t is significant that the cost of erection is only $63,750.00, out of a total purchase price of the tower of $270,000.00. . . . The relative cost of erection in relationship to the total cost of the tower clearly indicates the relative significance of [Stainless'] design and fabrication phase vis a vis the erection phase in the manufacturing of the tower.

The court cannot argue with these statements. However, KSLA seems to have overlooked the fact that Stainless' design and fabrication of the tower materials further *supports* a finding that the agreement was a construction contract.

In *Papa v. Louisiana Metal Awning Co., supra,* the court emphasized the fact that the aluminum patio cover "was *designed, fabricated and erected* by defendants" in finding that the agreement was a construction contract. 131 So.2d at 117 (emphasis added). Similarly, in *Bel v. Capital Properties, Inc., supra,* plaintiff *fabricated* and installed ornamental canvas awnings; the court categorized the contract as a building contract.

When one considers the value of the fabrication and design *in conjunction with* the cost of erection, there is no question that the contract "involved primarily the furnishing of labor and the contractor's skill in the performance of the job." *Papa v. Louisiana Metal Awning Co., id.*

■ For these reasons, this court finds that the transaction entered into between KSLA and RCA on May 15, 1964 must be considered a construction contract.

## (2)  APPLICABILITY OF § 2772

KSLA argues that, even if the transaction was a construction contract, § 2772 cannot constitutionally be applied to this particular contract. KSLA bases this argument on the fact that the Louisiana legislature did not enact § 2772 until June 30, 1964, after KSLA and RCA had already executed their agreement on May 15, 1964. Thus, KSLA contends that the statute cannot be applied retroactively since to do so would impair the obligations of the contract, in contravention of Art. 1, § 10 of the United States Constitution and Art. 1, § 23 of the Louisiana Constitution.

The court cannot accept this argument. In *Carr v. Mississippi Valley Electric Company,* 285 So.2d 301 (La.App. 4th Cir. 1973), the court looked to "the date of the completion of the work performed" as the date

upon which the ten–year period of § 2772 would begin to run. As mentioned previously, paragraphs VIII and IX of KSLA's original "complaint for damages" apparently accepts November 17, 1964 as the date by which construction had been completed. Even assuming for the sake of argument that construction may actually have been completed a month or two in advance of the letter of November 17, 1964,[6] Stainless' completion of the tower would still have occurred after the June 30, 1964 enactment of § 2772. Accordingly, this court does not agree with KSLA that there is a problem of retroactive application of § 2772.

However, this court is of the opinion that no constitutional problem exists in applying § 2772 under any circumstances. KSLA is unquestionably correct in asserting that art. 2762 of the Louisiana Civil Code imposes upon a contractor a ten–year warranty period which is implicit in a construction contract. *Orleans Parish School Board v. Pittman Construction Co.,* 261 La. 665, 260 So.2d 661 (La.1972) ("*Pittman I*"). Unlike the statute at issue in that case, however, § 2772 does not impair this ten–year warranty period in any way, since it does not bar any action which arises during the ten–year warranty period.

■ Furthermore, § 2772 affects only contractual *remedies,* not contractual obligations. A long line of United States Supreme Court cases has recognized the distinction between statutory modification of contractual obligations and contractual remedies. *Sturges v. Crowninshield,* 4 Wheat. 122, 200; *Von Hoffman v. City of Quincy,* 4 Wall. 535–554; *Honeyman v. Jacobs,* 306 U.S. 539, 59 S.Ct. 702, 83 L.Ed. 972 (1939). As the Louisiana Supreme Court has recently noted,

> . . . a newly-created statute of limitation or one which shortens existing periods of limitation will not violate the constitutional prohibition against divesting a vested right provided it allows a reasonable time for those affected by the act to assert their rights.

**6.**  *See* footnote 1, *supra.*

*Lott v. Haley*, 370 So.2d 521, 524 (La.1979). The Louisiana Fourth Circuit Court of Appeals has held that § 2772(G) provided a reasonable time for affected persons to assert their rights. *OPSB v. Pittman Construction Company*, 372 So.2d 717 (La.App. 4th Cir. 1979) (*"Pittman II"*). There is no question that the retroactive application of § 2772 does not offend the contract clause inasmuch as § 2772 affects only contractual remedies.[7]

■ In summary, then, this court concludes that there is no room for doubt in applying § 2772 to this case, whether because the construction was completed after the enactment of § 2772, or in view of the fact that § 2772 does not effect the ten-year implied warranty but modifies only a contractual remedy.

### (3) APPLICABILITY OF § 2772 TO MATERIALMEN AND MANUFACTURERS OF COMPONENT PARTS

KSLA's final argument is that § 2772 does not apply to Stainless in its capacities as materialmen and manufacturer of component parts, and that a negligence action brought against Stainless in one or both of those capacities is not barred by § 2772. Again, the court cannot agree.

In *Burmaster v. Gravity Drainage District of the Parish of St. Charles*, 366 So.2d 1381 (La.1978), the Louisiana Supreme Court did not reach the issue whether § 2772 includes or excludes materialmen and those furnishing or manufacturing construction components. However, the court noted that, even assuming *arguendo* that they are excluded from coverage, § 2772 would nevertheless be constitutional since their exclusion is founded on a valid distinction. The distinction cited by the court is as follows:

> Suppliers and manufacturers, who typically supply and produce components in large quantities, make standard goods and develop standard processes. They can thus maintain high quality control standards in the controlled environment of the factory. On the other hand, the architect or contractor can pre–test and standardize construction designs and plans only in a limited fashion. In addition, the inspection, supervision and observation of construction by architects and contractors involves individual expertise not susceptible of the quality control standards of the factory. Hence if, as plaintiff maintains, materialmen and those furnishing or manufacturing construction components are excluded from the coverage of the statute, it is reasonable for the legislature to have concluded that the product and work conditions of the materialmen and those furnishing or manufacturing construction components are sufficiently different from that of the architect an [sic] contractor such that the protection of the pre emptive period established by La.R.S. 9:2772 should not be accorded to that class.

366 So.2d at 1386. In developing these distinctions, the Louisiana Supreme Court ruled that it would have been fair for the legislature to have excluded materialmen and manufacturers of component parts from the purview of § 2772. However, these distinctions have no application to the facts in the instant case, since they do not address the situation where the contractor also performs the duties of materialmen or manufacturer or provider of component parts.

■ The objectives of § 2772 would be frustrated if this court were to allow suit against Stainless in its capacities as materialmen and manufacturer of component parts. As the Fourth Circuit Court of Appeals noted in *Carr v. Mississippi Valley Electric Company, supra* :

> The wisdom of the legislature in enacting [§ 2772] cannot be questioned by this court. The law was passed for a specific purpose, *i. e., to put at an end, at some*

---

7. As Stainless has noted in its reply memorandum, § 2772 has been applied retroactively by Louisiana courts in two recent cases. *OPSB v. Pittman Construction Company, Inc.*, 384 So.2d 573 (La.App. 4th Cir. 1980) (*"Pittman III"*); *Stipe v. Joseph A. Neyrey Gen. Cont.*, 385 So.2d 569 (La.App. 4th Cir. 1980).

*definite period of time, claims arising from construction.* It has the affect of creating a hardship in some instances. *At the same time it has the affect of preventing a hardship to contractors* who would have to defend a suit for damages occasioned more than ten years after their performance was completed.

285 So.2d at 302 (emphasis added). The statute's purpose of preventing hardships to contractors cannot be attained if a court allows the same claim to proceed against the same contractor in his capacity of materialman or manufacturer or provider of component parts. With these principles in mind, this court concludes that the legislature, in enacting § 2772, could not have intended to preempt causes of action against contractors who do not also serve as materialmen or manufacturers of component parts, yet allow causes of action to proceed against contractors who do serve in such dual capacities. For these reasons, this court finds that § 2772, within the facts of this case, applies to Stainless in its capacities as materialmen and manufacturer of component parts.

### (4) CONCLUSION

For the reasons set out in this Ruling, this court finds that § 2772 is applicable in this case, and preempts KSLA's claims. Accordingly, Stainless' motion for summary judgment is GRANTED, there being no disputed issues of material fact on the preemption issue, and judgment being appropriate as a matter of law. KSLA's motion for partial summary judgment in regard to this issue is DENIED. Because of the applicability of § 2772, this court cannot consider the merits of KSLA's claims; thus KSLA's motion for partial summary judgment concerning the redhibition claim is DENIED.[8]

The court is cognizant of the significant pecuniary damages suffered by KSLA as a result· of the tower's collapse, and of the harsh result brought about by the imposition of summary judgment. However, in this diversity case, this court sits as a Loui-

siana court and is bound to follow Louisiana law. At least one Louisiana court has recognized that harsh results may spring from application of § 2772; yet that court did apply § 2772 and dismissed the plaintiff's claims as it was bound to do. *Carr v. Mississippi Valley Electric Company, supra.*

RCA has not, as of yet, reurged its motion for summary judgment based upon § 2772. The court hereby grants RCA ten (10) days in which to reurge its motion. All other parties must file any motions within the same ten–day period. The court's action in granting Stainless' motion, as a practical matter, necessitates the continuance of the trial in this matter, which has previously been set for the week of November 3, 1980.

### JUDGMENT

For the reasons set out in the foregoing Ruling,

IT IS ORDERED AND ADJUDGED that the motion of defendant Stainless, Inc. for summary judgment is GRANTED.

IT IS FURTHER ORDERED AND ADJUDGED that plaintiff's claims against defendant Stainless, Inc. be DISMISSED with prejudice, and that defendant Stainless, Inc. recover of the plaintiff its costs of action.

---

8. Of course, KSLA's redhibition claim is also untenable because of the court's conclusion that the agreement in this case was a construc-

tion contract rather than a contract of sale. Redhibition is a remedy only when a sale is involved. .