Mrs. Linda Harper HOLDEN, Individually and as Natural Tutrix of the Estates of her minor children, Melvin Scott Holden, Sandra Kay Holden and Blake Alan Holden et al, Plaintiffs,

v.

PLACID OIL COMPANY et al, Defendants.

Civ. A. Nos. 75–3236, 75–3333, 76–2442, 76–2799, 79–2261 and 80–4078.

United States District Court, E. D. Louisiana.

March 12, 1981.

See also D.C., 494 F.Supp. 292.

Burke & Ballard, Maurice C. Hebert, Jr., Lawrence E. Abbot, Dean A. Sutherland, T. A. Hebert, Abbot & Horack, New Orleans, La., for Placid Oil Co. and Hartford Acc. and Indem. Co.; Armand A. Guiterrez, Dallas, Tex., of counsel.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Donald L. King, New Orleans, La., H. Lee Leonard, Voorhies & Labbe, Lafayette, La., for Michigan Wisconsin Pipe Line Co. and Harbor Ins. Co.

Phelps, Dunbar, Marks, Claverie & Sims, Gelpi, Sullivan, Carroll & LaBorde, Gerald T. Gelpi, Norman C. Sullivan, Jr., New Orleans, La., for Republic Steel Corp. and Travelers Ins. Co.

Seale, Sledge & Ross, Stephen C. Sledge, Hammond, La., Haydn S. Bercy, Livingston, La., Paul H. Due, Baton Rouge, La., Adams & Reese, Robert A. Vosbien, Martzell & Montero, Charles W. Dittmer, New Orleans, La., for National Union Fire Ins. Co. of Pittsburgh, Pa.

Caffery, Duhe, Oubre & Gibbens, John M. Duhe, Jr., John Blackwell, New Iberia, La., for Gulf Coast Machine & Sup. Co.

Normann & Normann, Charles E. Leche, Tyler S. Posey, New Orleans, La., for T. K. Valve & Mfg., Inc. and Hartford Acc. & Indem. Co.

CASSIBRY, District Judge:

### REASONS

This is the latest chapter in the lengthy litigation which resulted from an explosion of a pipeline on a fixed platform in the Gulf of Mexico in September of 1975. It appears that the explosion was caused when a valve in the pipeline ruptured. The explosion killed three workmen who were near the pipeline at the time of the explosion.

Within one year after the accident the decedents' respective survivors initiated wrongful death actions. The various defendants included: Placid Oil Company (Placid), the owner of the platform; Michigan-Wisconsin Pipeline Company (Michigan-Wisconsin), the owner of the pipeline; T. K. Valve & Manufacturing (T. K. Valve), the manufacturer of the ruptured valve; Gulf Coast Machine & Supply Company (Gulf Coast), the manufacturer of a rough steel forging that was incorporated in the valve; and Republic Steel Corporation (Republic), the maker of the steel used in the valve body. Shortly before one year from the accident Michigan-Wisconsin filed a cross-claim for indemnity and/or contribution against its co-defendants, T. K. Valve, Gulf Coast, and Republic, who were involved in the manufacture and distribution of the valve.

Nearly three years after the accident, in June 1978, National Union Insurance Company (National Union) intervened in these proceedings to recover from T. K. Valve, Gulf Coast, and Republic money paid to its insured, Michigan-Wisconsin, as reimbursement for "business interruption loss" allegedly sustained by Michigan-Wisconsin as a result of the accident. The insurer sued the same defendants who the owner had named in its cross-claim for indemnity—those involved in the manufacture of the valve.

The claims for wrongful death were settled by the various defendants with the plaintiffs in July, 1979. The parties were unable to compromise the intervention claim, however, because the defendants argued that the claim was barred by prescription. In July, 1980 this court held that National Union's tort claims had prescribed. However, it noted that the complaint in intervention also seemed to refer to contractual claims found in Michigan-Wisconsin's cross-claim for indemnity. The prescriptive period in Louisiana for contract causes of action is 10 years. La.Civ.Code Ann. art. 3544 (West 1952). Rather than dismissing the suit as entirely based on tort and forcing National Union to refile its claims, the court permitted National Union to amend its complaint to set forth a claim for business interruption loss based on contract.

National Union has filed two contractual claims in their amended complaint. One of the counts alleges that the defendants vio-

lated their implied warranty to provide valves which were free from defects. The second count alleges that the defendants violated their duty to install, service, and repair the valves in a workmanlike manner. The defendants have now moved for summary judgment as to those contract claims.

## I. The Implied Warranty Claim

■ National Union's implied warranty count is actually a claim under Louisiana law for redhibition. Redhibition is defined in Civil Code Article 2520:

> *Redhibition* is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.

A claim for breach of warranty, including an allegation of injuries sustained because of a hidden defect, falls under this definition. *Lemoine v. Avoyelles Farmers Co-op*, 307 So.2d 762 (La.App. 3rd Cir. 1975); *Victory Oil Company v. Perret*, 183 So.2d 360 (La.App. 4th Cir. 1966). The prescriptive period for a claim in redhibition is one year—the same as the tort prescriptive period. La.Civ.Code Ann. art. 2534 (1952). Therefore, if National Union's tort claims have prescribed, it follows that its implied warranty count, which is classified as a redhibition count, has also prescribed.

National Union seeks to preserve its claim by suggesting that this transaction was something other than a sale contract. Louisiana courts have traditionally drawn a distinction between sale contracts, where redhibition is the proper action, and a construction, or hiring of industry contract, where the plaintiff may maintain a contract action for failure to provide skillful and careful work. *KSLA–TV, Inc. v. Radio Corp. of America*, 501 F.Supp. 891 (W.D.La. 1980); *Gulf States Utilities Company v. Ecodyne Corp.*, 635 F.2d 517 (5th Cir. 1981). In the case of the latter action, the prescriptive period is ten years.

The distinction between a sale and a construction contract is an elusive one. Louisiana courts have attempted to define the distinction as the difference between an obligation "to give" (to transfer ownership) and an obligation "to do" (to perform some work). *KSLA–TV, supra*, at 895. Problems arise when a contract requires *both* an obligation to give and an obligation to do, as with the case where a seller not only sells an article but also agrees to install it. *See, e. g., Kegler's, Inc. v. Levy*, 239 So.2d 450 (La.App. 4th Cir. 1970). In such a case the courts often attempt to weigh "the economics of the situation" and determine which of the two is the primary obligation.[1]

In *Gulf States Utilities Company v. Ecodyne Corporation, supra*, the defendant supplied materials and design services to build two cooling towers for a utility plant. After the project was completed the plaintiff sued for damages, claiming defective design and faulty selection of materials. The defendant contended that the transaction was a sale and therefore the one year redhibitory prescriptive period applied. The court upheld the trial court ruling that the contract between the parties was not a contract of sale. It pointed to the defendant's duties to supply materials, designed the towers and supervise the erection, installation, and preliminary operation of the towers as indications that this transaction went far beyond a contract of sale.

■ The undisputed facts in this case, as revealed in the depositions of Terry Helm and Arthur Plow and the accompanying documents, clearly distinguish this case from *Gulf States* and indicate that this

---

1. The Work of the Louisiana Appellate Courts for the 1977–78 Term—Sales, 39 La.L.Rev. 705, 709 (1979). That inquiry may be aided somewhat by inquiring whether the article sold is sufficiently complex or is of such a character that it usually requires the seller to install it. Certain articles sold do not require that the seller install or service them. For example, the sale of a household appliance usually does not require installation by the seller although the seller may provide that service. However, it is simply impractical to suggest that an article such as the 1700 foot television tower in *KSLA–TV, supra*, could be purchased from the seller and then "installed" by someone else.

transaction was a sale.[2] Placid Oil, which was running the pipeline for Michigan-Wisconsin, ordered the valves through a purchase order from T. K. Valve. There was no pre-existing agreement between T. K. Valve and Placid to supply valves. The valves were standard size, that is, they were not manufactured to specifications for Placid. Placid ordered the valves sandblasted and painted, but that work was done at T. K. Valve's factory. Probably most importantly, T. K. Valve did not install the valves in the pipeline. T. K. Valve *did* later install pneumatic devices on two of the valves. However, this occurred only because the devices, which were ordered from a separate company, did not arrive in time to install them on the valves before they were sent to Placid. Therefore, T. K. Valve told Placid that they would send out the valves and install the devices later.

Based on these facts, the only conclusion I can draw is that the transaction was a sale and not a construction contract. Therefore National Union's implied warranty claim is a count in redhibition and has already prescribed.[3]

## II. Breach of a Repair Contract

National Union's complaint also alleges a breach by T. K. Valve of a contract to install, service, and repair the valves. While the evidence discussed above does not disclose any agreement to service or install the valves, there does appear to be sufficient evidence to raise a factual issue whether there was a contract formed between T. K. Valve and Michigan-Wisconsin to repair certain valves. The depositions of T. K. Valve's chief comptroller and chief engineer indicate that two years after the purchase of the valves, Placid Oil contacted T. K. Valve and requested that T. K. servicemen repair one of the valves. The warranty on these valves had run out nearly one year earlier, so this was an independent order done at Placid's expense. Two T. K. Valve employees worked on the valve for several days until it was repaired and then were asked by Placid employees to look at several of the other valves on the pipeline. They were working on one of the other valves when it ruptured, causing an explosion.

It appears that there may have been a contractual arrangement between T. K. Valve and Placid, independent of the original sale of the valves, to repair several of the valves on the pipeline. Contracts in Louisiana require lawful consent and a certain object which forms the matter of the agreement. La.Civ.Code Ann. art. 1779 (West 1952). The transaction to repair the valves appears to fulfill both criteria since there was consent (Placid requested the repairs and T. K. Valve responded by sending out its repairmen) and an object (the repairs) which formed the basis of the agreement.[4]

---

**2.** Ordinarily, the question whether a particular transaction is a construction contract or a contract of sale is an issue of material fact, which must be resolved at trial. However, the depositions mentioned above clearly indicate the undisputed factual circumstances surrounding the transaction. *See KSLA–TV, supra,* at 893.

**3.** The defendants point to *PPG Industries, Inc. v. Schega,* 362 So.2d 1128 (La.App. 4th Cir. 1978) as support for their position that the contract in the present case is a construction contract. In *Schega,* the plaintiff agreed to furnish and install certain glass in the defendant's home, representing that it would shield out direct light. After the defendant completed the work, the defendant refused to pay, claiming that the glass was defective. The plaintiff answered that the defendant's proper course was an action for redhibition rather than a claim for breach of contract.

The court held that the transaction was a construction contract and therefore redhibition did not apply. Among other things, it noted that the glass ordered by the defendant constituted nearly 50% of the exterior walls of the house, and that the glass had been specially cut for the defendant's home. These factors, the court concluded, combined with the installation of the glass by the seller, made the sale only part of a larger construction contract to build a part of the house. In the present case T. K. Valve sold standard size valves to Placid, who then had them installed by another party as one component in a pipeline. It is therefore difficult to see how the two transactions can be analogized.

**4.** The parties have not addressed the issue whether the arrangement to repair the valves between Placid Oil and T. K. Valve constituted a contract between Michigan-Wisconsin and T.

■ Article 2769 of the Louisiana Civil Code provides that if an undertaker fails to execute the contracted work in the manner he has agreed, he will be liable for the losses resulting from his noncompliance with the contract. Implicit in every such contract is an implied obligation that the work will be performed "in a skillful, careful, diligent, and good workmanlike manner." *Hebert v. Pierrotti,* 205 So.2d 888 (La.App. 3rd Cir. 1968). Thus, in *Hebert, supra,* the court permitted the plaintiff to recover against a moving company for damages to his home caused by the company's lack of skill in performing the contracted for task.

The applicable prescriptive period for such an action is ten years. La.Civ.Code Ann. art. 3544 (West 1952). *In State ex rel. Guste v. Chemical Applicators of Lafayette,* 379 So.2d 1199 (La.App. 3rd Cir. 1980), the court addressed almost precisely the same prescription question at issue in this case. In *Guste,* the Louisiana Stadium and Exposition District (LSED) entered into a contract with Building Engineer Services Company (BESCO) to operate and maintain certain facilities in the Louisiana Superdome. BESCO in turn contracted with the defendant, Bellguard, to clean an absorbtion chiller in the structure. During the cleaning process the defendant damaged the tubes in the chiller, requiring $47,060 in repairs. LSED brought suit against the defendant for damages. The defendant filed an exception that the plaintiff's claim was in tort and had prescribed since it was not filed in the one year prescriptive period. The trial court sustained the exception.

The Louisiana court of appeals reversed. After finding a contractual arrangement between LSED and the defendant, the court addressed the issue of whether the claim sounded in contract or tort:

> The law is clear that where a party has been damaged by conduct arising out of a contract he may have a right to seek damages both in tort and for breach of contract. In this event he has the option of pursuing either type of action.... *See Federal Insurance Company v. Insurance Company of North Carolina,* [262 La. 509] 263 So.2d 871 (1972).

*Id.* at 1201. Accordingly, since the plaintiff framed the complaint in contractual language, the court held that the ten year prescriptive period of Article 3544 applied.

■ National Union's amended complaint, like that of the plaintiff in *Guste,* is framed in contract. Therefore, it appears that National Union may have an action for breach of contract in repairing the valve. But there are two important limitations to that action. First, National Union can only recover if it proves that the explosion was caused by the T. K. Valve servicemen working on the valve. It cannot recover if the explosion was cawred by a defective condition in the valve, since that claim falls under a tort/redhibition theory that has already prescribed. Second, the contractual claim is only good against T. K. Valve, since it was the only one of the defendants with a contractual arrangement for repairs with Placid. Under either limitation, National Union cannot recover against Gulf Coast or Republic Steel. Therefore, their motions for summary judgment will be granted.

## III. An Indemnity Claim?

There are also summary judgment motions filed by Gulf Coast and Republic Steel in an ancillary case to *Holden v. Placid Oil: Michigan-Wisconsin v. T. K. Valve.* That case and another case, *Placid Oil v. Michigan-Wisconsin,* arose out of an alleged agency agreement between Michigan-Wisconsin and Placid, which stated that Placid would supervise and maintain Michigan-Wisconsin's pipeline and repair it if necessary. After the explosion on the platform, Placid repaired the pipeline and sought payment from Michigan-Wisconsin under the agreement. Michigan-Wisconsin refused to pay and Placid brought suit for breach of contract (Civil Action No. 79–2261). Michi-

K. Valve. Presumably Michigan-Wisconsin's participation in the contract must be proved by showing some kind of agency relationship between Placid and Michigan-Wisconsin. However, that is a factual issue which must be proved at trial.

gan-Wisconsin then filed its own action (No. 80–4078) against T. K. Valve, Gulf Coast, and Republic, claiming that they were responsible for the accident and therefore Michigan-Wisconsin was entitled to indemnity from them for any damages it had to pay to Placid. Both Placid Oil's and Michigan-Wisconsin's actions were transferred to this court and consolidated with the main action, *Holden v. Placid Oil.*

Gulf Coast and Republic have moved for summary judgment as to Michigan-Wisconsin's claims against them. They contend that since Michigan-Wisconsin filed its action five years after the accident, then, like National Union's tort and redhibition claims in the main action, they have prescribed. Michigan-Wisconsin responds that its claim against the defendants has not prescribed because it is seeking indemnity from the defendants and the prescriptive period in an indemnity claim is ten years from the time the party seeking indemnity is cast in judgment. La.Civ.Code Ann. art. 3544 (West 1952); *Edward Levy Metals, Inc. v. New Orleans Public Belt Railroad,* 243 La. 860, 148 So.2d 580 (1963).

■ Michigan-Wisconsin is correct in its summary of the law applicable to prescription of indemnity claims. However, I do not believe that Michigan-Wisconsin's action against T. K. Valve, Gulf Coast, and Republic can adequately be termed an indemnity claim. The right to indemnification arises out of either an express contract of indemnification or a quasi-contractual theory based on unjust enrichment. *Joiner v. Diamond M. Company,* 500 F.Supp. 619 (W.D.La.1980). Since there was no contractual indemnity arrangement between Michigan-Wisconsin and the defendants, Michigan-Wisconsin must rely on a quasi-contractual theory.

■ The foundation of the quasi-contractual theory of indemnity is that the party seeking indemnity was or will be required to pay money to the plaintiff even though another party was actually responsible for the injury or damage. Thus the party actually responsible is "unjustly enriched" at the expense of the party forced to pay the

plaintiff. *Minyard v. Curtis Products, Inc.,* 251 La. 624, 205 So.2d 422 (1967).

Quasi-contractual indemnity ordinarily exists in two different instances. In the first instance, two parties are both liable in tort to the plaintiff. However, one of them is only *technically* or passively liable to the plaintiff because of some statutory requirement or legally imposed duty, while the other defendant is actually at fault for the damages sought. For example, a defendant held liable because of the actions of his employee may recover indemnity against the employee. *Costa v. Yochim,* 104 La. 170, 28 So. 992 (1900); *See also Sutton v. Champagne,* 141 La. 469, 75 So. 209 (1917). Placid's claim against Michigan-Wisconsin is based on contract rather than tort. Therefore this form of quasi-contractual indemnity is inapplicable.

In the second instance, a party who has breached a contractual duty to the plaintiff claims that a third-party, not contractually bound to the plaintiff, caused the defendant to breach the contract. For example, in *Edward Levy Metals, Inc. v. New Orleans Public Belt Railway,* 243 La. 860, 148 So.2d 580 (1963), a shipper sued the defendant railroad for failure to deliver a carload of scrap metal under the railroad's contract of carriage. The railroad impleaded a scrap company who had come into possession of the shipment by a mistake of another party and who refused to return the metal. The court held that, since the third-party's possession of the shipment gave rise to the shipper's claim against the railroad, the railroad's claim against the third-party was an indemnity claim. *See also Minyard, supra.*

■ The present case does not qualify under the second situation either. Placid Oil sued Michigan-Wisconsin for failure to pay for repairs on Michigan-Wisconsin's pipeline which were done pursuant to a contract between the two parties. T. K. Valve, Gulf Coast and Republic were not parties to that contract. Furthermore, they did not prevent Michigan-Wisconsin from performing its contract with Placid Oil.

Although their alleged actions may have necessitated the repairs, they did not cause the actual breach by Michigan-Wisconsin—the failure to pay for the repairs. Therefore, the defendants have no quasi-contractual duty to indemnify Michigan-Wisconsin. *See Travelers Insurance Company v. Veal*, 280 So.2d 285 (La.App. 3rd Cir. 1973).

Michigan-Wisconsin insists that its claim must be one for indemnification because it could not assert a claim against the defendants before Placid Oil asserted a claim against it. That argument misstates the nature of Michigan-Wisconsin's rights against the defendants in this suit. Michigan-Wisconsin's action was not subsidiary to Placid's action against it. *Minyard, supra*, at 432. Michigan-Wisconsin, the owner of the pipeline, had a right to sue the defendants for the damage to the pipeline as soon as the accident occurred. It did not have to wait for Placid Oil to sue for the cost of repairs.

Michigan-Wisconsin had one year from the accident to assert any tort or redhibition claims it had against the defendants. Since it failed to file its action until nearly five years later, those tort and redhibition claims have prescribed. The only claim Michigan-Wisconsin has left is the same claim its subrogated insurer, National Union, has in the main action—a claim against T. K. Valve for breach of contract of repair against T. K. Valve. Accordingly, the motions of Gulf Coast and Republic for summary judgment in Civil Action No. 80–4078 are granted. A judgment will be prepared accordingly.